IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ERIC M. HIBBLER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   CIVIL ACTION NO. 10-G-3373-W |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Eric M. Hibbler, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations

omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## DISCUSSION

The plaintiff claims disability under Listing 12.05C, which requires that the claimant have "A valid verbal, performance, or full-scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993)(quoting Listing 12.05C).  When considering whether the plaintiff has a physical or mental impairment imposing significant work-related limitation of function in addition to a low verbal scale I.Q., the Commissioner must consider the plaintiff's impairments in combination.  Davis 985 F.2d at 533.  The issue of what constitutes "a physical or other mental impairment imposing additional and significant work-related limitation of function" was addressed in Edwards by Edwards v. Heckler:

> An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal.  The question under Listing 12.05(c), however, is not whether the impairment is in and of itself disabling, see Wright v. Schweiker, 566 F.Supp 468, 476 (M.D.Tenn. 1983); thus, "significant" requires something less than severe within the meaning of § 404.1520(c) [of the Commissioner's Regulations].

755 F.2d 1513, 1515 (11th Cir. 1985)(considering whether the presence of chronic obstructive lung disease and exercise induced asthma provided a sufficient additional impairment to meet the second prong of Listing 12.05C.).  The second part of the Listing,

therefore, imposes a less stringent requirement than that imposed by 20 C.F.R. § 404.1520(c). Section 404.1520 sets forth the five-step sequential process by which a claimant's disability is evaluated. Section 404.1520(c) defines "severe impairment" to require that the impairment or combination of impairments significantly limit the claimant's physical or mental ability to do basic work activities.

In addition to a valid I.Q. score meeting the requirements of Listing 12.05C, a plaintiff must also satisfy the diagnostic description in the introductory paragraph of Listing 12.05C. Listing 12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.") The introductory paragraph to Listing 12.05C is as follows:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Therefore, a claimant must have manifested "significantly subaverage general intellectual functioning with deficits in adaptive functioning" prior to the age of 22 in order to meet Listing 12.05C. In this circuit, it is presumed that a person's I.Q. remains fairly constant throughout his life and a valid I.Q. test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two. Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir. 2001). The Hodges, court recognized that

although this circuit had not formally recognized this presumption, it had been implicitly recognized in Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992), that when a claimant presents a valid I.Q. score meeting the Listing criteria, he is presumptively disabled under the Listing if the other requirements of the Listing have been met. Hodges, 276 F.3d at 1269.

The court has carefully reviewed the record and finds that the decision of the ALJ, Sherianne Laba Rote, must be reversed and the action remanded for further development of the record. The ALJ found that the plaintiff suffered from the following medically determinable impairment: mild mental retardation. [R. 11]. However, the ALJ found that the plaintiff does not have a severe impairment or combination of impairments. Id.

The plaintiff was 34 years old at the time of the ALJ's decision and alleges disability beginning April 1, 2008. On September 24, 2008, the plaintiff underwent a consultative psychological examination at the request of his attorney by Donald W. Blanton, Ph.D. The WAIS-III IQ test was administered, and the plaintiff obtained a Verbal IQ score of 65, Performance IQ score of 63, and a Full Scale IQ score of 62. [R. 197]. Dr. Blanton said, "This was felt to be a valid assessment of his current level of intellectual functioning as there were no distracting factors during the testing session and he appeared to put good effort into his work." [R. 198].

The ALJ found:

> The claimant's mental impairment does not satisfy the threshold test of a significantly subaverage general intellectual functioning with deficits in adaptive functioning. Although the evidence indicates the claimant was in special education classes (Exhibit 11E) and the claimant received a full scale IQ score of 62 during the consultative evaluation (Exhibit 4F), the vocational expert testified that the claimant had performed semiskilled work as a parts puller during the relevant period, which is not consistent with the level of impairment that the claimant alleges.

[R. 13]. The ALJ afforded no weight to the opinions of Dr. Blanton. However, Dr. Blanton considered the results of his testing to be a valid assessment of the plaintiff's intellectual functioning. [R. 198]. He diagnosed mild mental retardation, pain disorder without significant psychological features, financial problems and chronic pain. Id. According to Dr. Blanton's findings, including mild mental retardation which meets the first prong of Listing 12.05C, the conclusion by the ALJ that the plaintiff's mild mental retardation is not a severe impairment, is not supported by substantial evidence. Therefore, the ALJ erred at Step Two of the sequential evaluation process.

There are only three treating records which pre-date the plaintiff's alleged onset date of April 1, 2008, by four to five years. On August 12, 2003, the plaintiff was seen at Greene County Hospital Physicians Clinic. He complained of lower back pain radiating down to his right knee. [R. 178]. The assessment was right hip arthritis, and he was given Motrin. Id. On September 15, 2003, he was seen for follow up, still having pain in his right hip and right leg. [R. 179]. The doctor gave him samples of Bextra and hydrocortisone cream. Id. The last treatment record is from June 2, 2004. He

complained of pain in his lower abdomen and back, radiating to his knee. [R. 177]. He was diagnosed with lower back and hip pain, and sciatica. Id. The doctor thought he needed an MRI of his lumbar spine, "but he seems to be able not to afford." Id. He was given Motrin, Flexeril and Darvocet. Id. There are no other treating records.

On August 19, 2008, Judy Cooke Travis, M.D., examined the plaintiff at the request of the Commissioner. On examination, Dr. Travis noted:

> No deformity of the joints of the ankles, knees, or hips. Dorsiflexion at the right ankle is 20 degrees and at the left ankle is 20 degrees. Plantar flexion 40 degrees on right, 40 degrees on left. Range of motion is full and intact to flexion and extension at the knees. The right hip passively flexed to 100 degrees and the left to 100 degrees. Patient can rotate the body 30 degrees clockwise and 30 degrees counterclockwise; can lean over and touch the lower legs and stand back up. The patient was able to perform heel to toe testing. The lower extremities are symmetric.

[R. 183]. As for his back and spine, Dr. Travis found:

> The patient stands with a normal base stance; can lean forward and stoop down. Curvature is normal. There is slightly decreased mobility in the lumbar spine. There is tenderness to percussion over the lumbar musculature.

Id. Range of motion was all normal, as well as dexterity and grip strength. [R. 186]. Dr. Travis diagnosed lower back pain with radiation through right hip and groin, and stated, "Based on this examination today, it is my opinion that this patient should have a rheumatoid factor obtained prior to determining disability." [R. 184].(emphasis added)

The ALJ commented on the plaintiff's alleged back pain:

> Although the claimant alleged that he has back pain with a rating of 7 on a 10-point scale, there are no medical records to support any back pain. The

> claimant was given the opportunity to supplement the record with records from Greene County however; the representative indicated that records were not available. Judy Travis, M.D., conducted a consultative physical examination of the claimant on August 19, 2008 (Exhibit 2F). Dr. Travis noted there was slightly decreased mobility in the lumbar spine but no other evidence of any impairment related to the claimant's back. The record contains some very old visits to the emergency room department for his back pain, but none within the relevant time frame of this request for disability (Exhibit 1F). Since there is no objective medical evidence or relevant diagnosis, which could reasonably explain the claimant's symptoms, I find this is not a medically determined impairment.

[R. 11]. In finding the plaintiff's pain testimony not credible, the ALJ found it was:

> not supported by the medical evidence of record. The record is devoid of any treating source records from the relevant period, as noted above, which establish a medically determined physical impairment.

[R. 13].

This court should not, and neither should the ALJ, succumb "to the [forbidden] temptation to play doctor and make [his] own independent medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). Because the consulting physical examiner recommended further evaluation of the plaintiff's physical condition, including having the plaintiff's rheumatoid factor determined, and because of the Commissioner's duty to develop the record fully and fairly, "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988)(quoting Reeves v. Heckler, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (internal quotation marks omitted). In the present case, the ALJ's failure to fully develop the record regarding the

plaintiff's physical condition, including his rheumatoid factor, prevented him from making an informed decision.

On remand, the Commissioner shall proceed with the sequential evaluation process and properly develop the record concerning the plaintiff's condition, to include ordering a consultative examination to determine the plaintiff's rheumatoid factor, and whether his condition impairs his ability to work. The Commissioner shall consider the combined impact of all his impairments.  When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling.  In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

After fully and fairly developing the record regarding the plaintiff's physical condition and the effect of the combination of the plaintiff's impairments, the Commissioner also shall elicit testimony from a vocational expert about the impact of the plaintiff's combination of impairments on his ability to work.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 3 August 2011.

                                                UNITED STATES DISTRICT JUDGE
                                                      J. FOY GUIN, JR.